UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND SWEET,

        Plaintiff,                                    Hon. Richard Alan Enslen

v.                                                    Case No. 5:05-CV-002

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 15, 23). He earned a General Educational Development (GED) diploma and worked previously as a roofer/waterproofer and laborer. (Tr. 15, 63, 69, 83).

Plaintiff applied for benefits on September 17, 2001, alleging that he had been disabled since January 1, 1995, due to rheumatoid arthritis, ankylosing spondylitis, ulcerative colitis, severe back pain, and numbness. (Tr. 46-48, 62). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-45). On November 25, 2003, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, James Engelkes. (Tr. 395-432). In a written decision dated January 29, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 14-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On April 2, 1997, Plaintiff participated in a CT scan of his lumbar spine, the results of which revealed a "slight compression deformity" at L1 and a "moderately prominent" disc bulge at T11-12, but no evidence of spinal stenosis or spinal canal compromise. (Tr. 103).

X-rays of Plaintiff's cervical spine, taken on April 2, 1999, revealed "diffuse mild facet disease without evidence of acute injury or neural foraminal narrowing." (Tr. 311). X-rays of Plaintiff's thoracic spine, taken the same day, revealed a compression fracture at L1, but otherwise there was no evidence of other fracture or abnormality. *Id.*

On April 27, 1999, Plaintiff participated in a cardiovascular stress test, the results of which were "normal," revealing that he possesses "an average level of fitness for [his] age." (Tr. 133).

On June 30, 1999, Plaintiff participated in laboratory tests, the results of which revealed the presence of ulcerative colitis. (Tr. 118-19). On August 30, 1999, Plaintiff was examined by Dr. Scott Plaehn, with the Michigan Gastroenterology Institute. (Tr. 116). Plaintiff denied experiencing any abdominal cramping and reported that he was doing "quite well from the standpoint of his colitis." *Id.*

Laboratory tests performed on September 28, 1999, revealed that Plaintiff was suffering from "chronic hepatitis C with mild activity." (Tr. 114).

On October 26, 1999, Plaintiff was examined by Dr. Niti Thakur. (Tr. 202-03). Plaintiff reported that he was experiencing pain in his neck, wrists, knees, and ankles. (Tr. 202). He also reported experiencing headaches "which are more frequent." Plaintiff reported that if he attempts to do "anything" his joints swell. *Id.* Plaintiff exhibited decreased range of motion in his

right wrist, but normal range of motion in his left wrist. (Tr. 203). He exhibited full range of motion in his elbows and shoulders. An examination of his spine revealed decreased range of movement but no evidence of tenderness. An examination of Plaintiff's lower extremities was unremarkable. Dr. Thakur diagnosed Plaintiff with "seronegative spondylarthropathy, which is secondary to ulcerative colitis." The doctor instructed Plaintiff to "continue to exercise on a regular basis, for example, walking or biking or even swimming." *Id.*

On January 19, 2000, Dr. Thakur completed a Medical Assessment of Ability to do Work-Related Activities (Physical) regarding Plaintiff's physical limitations. (Tr. 198-201). The doctor reported that during an 8-hour workday, Plaintiff can "never" sit, "never" stand, and "never" walk. (Tr. 198). Dr. Thakur reported that Plaintiff can "never" lift, carry, or push any amount of weight. (Tr. 199-200). The doctor reported that Plaintiff can "occasionally" perform simple grasping or fine manipulation activities with his lower extremities. (Tr. 199). As for postural limitations, Dr. Thakur reported that Plaintiff can "never" bend, twist, reach above shoulder level, squat, kneel, climb stairs, crawl, or stoop. (Tr. 200). The doctor concluded that Plaintiff is "totally disabled at this time." (Tr. 201).

On January 10, 2001, Plaintiff was examined by Dr. Carol Monson. (Tr. 268). Plaintiff reported experiencing lower back pain. He reported that he "has been running [the] snow blower." Straight leg raising was negative. *Id.* X-rays of Plaintiff's lumbar spine revealed that Plaintiff's L1 compression fracture was "stable." (Tr. 269). This examination also revealed "mild" disc space narrowing at L4-5 and "mild" degenerative changes at L4-5 and L5-S1, but there was no evidence of malalignment, fracture, or dislocation. *Id.* Dr. Monson diagnosed Plaintiff with

5

ankylosing spondylitis[1] and instructed him to participate in aquatic exercises. (Tr. 260, 262). Subsequent treatment notes, however, revealed that Plaintiff did not perform his prescribed exercises. (Tr. 257).

On January 26, 2001, Plaintiff participated in an electrodiagnostic examination to evaluate his complaints of low back pain and numbness in his toes. (Tr. 148). This examination revealed "borderline electrodiagnostic evidence for a diffuse, primarily sensory, peripheral polyneuropathy." There was no evidence, however, that Plaintiff suffered from a lumbosacral radiculopathy or tarsal tunnel syndrome. *Id.* An MRI of Plaintiff's lumbar spine, performed the same day, revealed a "mild" compression deformity at L1 and "tiny" disc protrusions at L2-3 and L5-S1. (Tr. 266). The results of the examination were otherwise unremarkable. *Id.*

Following a March 6, 2001 examination of Plaintiff, Dr. Thakur reported that Plaintiff's colitis was "stable." (Tr. 187).

On May 2, 2001, Plaintiff received a lumbar epidural steroid injection at L3-4. (Tr. 161). Plaintiff received additional such injections on May 17, 2001, and May 29, 2001. (Tr. 157, 159). On June 22, 2001, Plaintiff received facet block injections at L3-4 and L4-5. (Tr. 151). On June 29, 2001, Plaintiff reported that he feels "greatly improved" and that his pain had improved by 40 percent. (Tr. 156).

On July 16, 2001, Plaintiff reported that he was working a "couple days a week" helping a friend plant grass and trees. (Tr. 185). On November 13, 2001, Plaintiff reported that he had been doing "a lot" of leaf raking. (Tr. 179).

---

[1] Anklylosing sponddylitis is a form of rheumatoid arthritis affecting the spine. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* A-266 (Matthew Bender) (1996).

On November 16, 2001, Plaintiff participated in a consultive examination conducted by Blaine Pinaire, Ph.D. (Tr. 174-77). Plaintiff reported that he typically spends his days "lying flat on a mattress" watching television. (Tr. 175). He also reported that he shops and performs housework, "but takes it slow." *Id.* The results of a mental status examination were unremarkable. (Tr. 175-77). The doctor diagnosed Plaintiff with: (1) pain disorder associated with both psychological factors and a general medical condition, (2) adjustment disorder with depressed mood, (3) alcohol dependence, and (4) history of polysubstance abuse. (Tr. 177). His GAF score was rated as 58. *Id.*

On December 18, 2001, Dr. Sydney Joseph completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 208-21). Determining that Plaintiff suffered from an adjustment disorder with depressed mood and "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms," the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.07 (Somatoform Disorders) of the Listing of Impairments. (Tr. 209-17). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 218). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. *Id.*

Dr. Joseph also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr.

7

222-23). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On May 1, 2002, Plaintiff reported to an ambulatory care center complaining that he scratched his right eye. (Tr. 377). When asked how he injured his eye, Plaintiff reported that he "does work with cement but he is also out in the woods a lot doing sporting activities there and he is not sure if he scratched his eye on a branch." An examination of Plaintiff's eye revealed only the presence of a "superficial" abrasion. *Id.*

On May 6, 2002, Plaintiff reported that recently prescribed suppositories were "helping a lot" to alleviate his colitis symptoms. (Tr. 341). On July 29 2002, Plaintiff reported that his colitis was "fine" so long as he used his suppositories. (Tr. 340). On February 24, 2003, Plaintiff reported that his colitis was "doing well." (Tr. 334).

On March 11, 2003, Plaintiff was examined by Dr. Thakur. (Tr. 365). The examination revealed no evidence of muscular or neurological abnormality and Plaintiff reported that his back pain was "better since staying physically active." *Id.*

On April 14, 2003, Plaintiff was examined by Dr. Plaehn. (Tr. 332). Laboratory tests regarding Plaintiff's hepatitis C revealed only "mild" activity. Plaintiff reported that his colitis was "running smooth." He further reported that his arthritis "is doing much better since he has increased his physical activity." *Id.*

On October 3, 2003, Plaintiff was examined by Dr. Eric Lewandowski. (Tr. 372). The results of the examination were unremarkable and Plaintiff reported that he was "feeling well." *Id.*

On November 14, 2003, Dr. Thakur completed a Medical Assessment of Ability to do Work-Related Activities (Physical) regarding Plaintiff's physical limitations. (Tr. 391-94). The doctor reported that during an 8-hour workday, Plaintiff can "never" sit, "never" stand, and "never" walk. (Tr. 391). Dr. Thakur reported that Plaintiff can "never" lift, carry, or push any amount of weight. (Tr. 392-93). The doctor reported that Plaintiff can "occasionally" perform simple grasping or fine manipulation activities with his lower extremities. (Tr. 392). As for postural limitations, Dr. Thakur reported that Plaintiff can "never" bend, twist, reach above shoulder level, squat, kneel, climb stairs, crawl, or stoop. (Tr. 392-93). The doctor concluded that Plaintiff is "completely disabled." (Tr. 393).

At the administrative hearing Plaintiff reported that he can sit for 10 minutes, stand/walk for 15 minutes, and lift 15 pounds. (Tr. 409-10). He also reported that he can bend, squat, and climb stairs. (Tr. 410). Plaintiff reported that he experienced no side effects from his medication. (Tr. 414). Plaintiff reported that he does not regularly perform his prescribed exercises. (Tr. 418).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and

9

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) an old L1 compression fracture, (3) ankylosing spondylitis, (4) rheumatoid arthritis, (5) hepatitis C, (6) ulcerative colitis, and (7) an adjustment disorder with depressed mood. (Tr. 18). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 19-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

---

which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### 1.  The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he cannot lift more than 15 pounds at one time or 10 pounds frequently, (2) he cannot stand or walk more than 2 hours in an 8-hour workday, (3) he cannot perform repetitive handling or fingering activities with either upper extremity, (4) he cannot push or pull more than 15 pounds, (5) he cannot climb ladders, ropes, or scaffolds, (6) he can only occasionally stoop, crouch, kneel, crawl, climb stairs/ramps, bend, twist, or turn at the waist, and (7) he requires a sit/stand option.  (Tr. 20).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and has

never experienced episodes of deterioration or decompensation in work or work-like settings. Accordingly, the ALJ concluded that Plaintiff was relegated to the performance of relatively simple, unskilled, low stress work that does not require taking initiative, making independent decisions, or meeting production standards or quotas. *Id.* After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Engelkes.

The vocational expert testified that there existed approximately 22,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 426-29). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923

F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

### a. The ALJ Properly Evaluated the Medical Evidence

In a report dated January 19, 2000, Dr. Thakur reported that during an 8-hour workday, Plaintiff can "never" sit, "never" stand, and "never" walk. (Tr. 198). The doctor also reported that Plaintiff can "never" lift, carry, or push any amount of weight. (Tr. 199-200). Dr. Thakur concluded that Plaintiff was "totally disabled." (Tr. 201). In a similar report dated November 14, 2003, Dr. Thakur[3] reported that during an 8-hour workday, Plaintiff can "never" sit, "never" stand, and "never" walk. (Tr. 391). The doctor reported that Plaintiff can "never" lift, carry, or push any amount of weight. (Tr. 392-93). The doctor again concluded that Plaintiff was "completely disabled." (Tr. 393). Plaintiff asserts that because Dr. Thakur was his treating physician, the ALJ was obligated to accord controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

---

[3] In his brief, Plaintiff incorrectly attributes this report to Dr. Plaehn.

13

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. Finally, the ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

With respect to the severity of Plaintiff's various impairments, the ALJ observed the following:

> the results of MRI, CT, EMG, radiographic, biopsy, serology and clinical evaluations do not uncover totally debilitating pathology. Imaging studies of the claimant's spine were negative for malalignment, discrete herniation, stenosis, neurogenic impingement, or significant degenerative changes. Electromyographic reviews showed modest anomaly, and no brachial plexopathy or active radicular processes. The claimant ambulates without an assistive device and retains largely intact [in] neurological terms. The claimant's extremity reviews were not indicative of clubbing, cyanosis, edema, heat, discoloration, diminished pulsation or atrophic changes.
>
> The claimant has a number of diagnoses including rheumatoid arthritis and anklyosing spondylitis. The record does not demonstrate, however, that the claimant has persistent joint inflammation, synovial thickening, subcutaneous rheumatoid nodules, leg ulcers, lymphadenopathy, deformities, contraction flexures, acute iritis, kyphosis, pleural or pericardial effusions, or other manifestations common to these diseases. The claimant has documented hepatitis and ulcerative colitis. The evidence discloses that these maladies have been reasonably well controlled with medication. Biopsies of the claimant's liver showed fairly mild and stable abnormalities. The claimant's conditions have not engendered ascites, organomegaly, esophageal varices, encephalopathy, or meaningful significant nutritional deficiency.

(Tr. 19).

With respect to the opinions expressed by Dr. Thakur, the ALJ determined that such were entitled to "minimal" weight:

> Of course medical opinions on the ultimate question of disability are not binding on the Commissioner. Where, as here, that opinion is not well supported objectively, and is inconsistent with other substantial evidence in the case record, it is not afforded controlling weight under 20 CFR § 416.927(d)(2) and Social Security Ruling 96-2p. In supporting his conclusions, the doctor merely checked blocks next to x-rays, MRI results and blood testing. As discussed earlier in this decision, such evaluations were only modestly abnormal, and certainly not indicative of work preclusive pathology. A review of Dr. Thakur's own progress reports show little in the way of abnormal clinical findings, and are comprised substantially of the claimant's subjective complaints. The degree of limitations ascribed to the claimant by Dr. Thakur is contraindicated by substantial evidence in the case file, including the findings of treating physician Dr. Plaehn, and the claimant's own activities and lifestyle.

(Tr. 21).

As the ALJ correctly concluded, while Plaintiff's impairments are severe the objective medical evidence does not support Dr. Thakur's opinion that such are disabling in nature. The Court concludes, therefore, that the ALJ properly discounted Dr. Thakur's opinion.

b.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 22,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision conforms to the proper legal standards and is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: January 31, 2006              /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge